IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KHARI CUMMINGS,

    Plaintiff,

      v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.
as Nominee for Fremont Investment &
Loan, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3302-TWT

## OPINION AND ORDER

This is an action for wrongful foreclosure. It is before the Court on the

Defendant Rubin Lublin's Motion for Judgment on the Pleadings [Doc. 6]; the

Defendants Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.;

MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-

FM1's Motion for Leave to File Excess Pages [Doc. 9]; the Defendants Countrywide

Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; MERS; and Nomura Home

Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1's Motion to Dismiss

[Doc. 10]; and the Plaintiff's First Motion for Extension of Time to Respond [Doc.

16].

# I. Background

## A.    Procedural History

On September 3, 2013, in the Superior Court of Fulton County, the Plaintiff, Khari Cummings, filed suit against the Defendants, Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; Mortgage Electronic Registration System; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1. The Defendants removed the suit to this Court on October 3, 2013, and filed the instant motions.

The Plaintiff never responded to the Defendant Rubin Lublin's Motion for Judgment on the Pleadings [Doc. 6] and the Court deems that motion unopposed.[1] The Plaintiff filed an untimely motion to extend time to respond to the Defendants Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1's

---

[1]    *See* LR 7.1(B), N.D. Ga. The Court notes that on November 12, 2013, the Plaintiff filed a motion for extension of time to respond to the Defendant Rubin Lubin's motion for protective order.  The Court, however, had already granted the motion for protective order on October 24, 2013.  That order stayed pretrial deadlines while the Court considered the Defendants' motion for judgment on the pleading and motion to dismiss.  Further, the Plaintiff did eventually respond to the Defendants Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1's motion to dismiss.  *See* Docket Entry [17].  While the Plaintiff styled that response as also including the Defendant Rubin Lubin's motion for protective order, the Plaintiff made no argument with respect to the Defendant Rubin Lubin in that response.

motion to dismiss.  The response time had already passed and the motion had been submitted to the Court.[2]  The Plaintiff's counsel contends that she had several leaves of absences in place at the time the response time was running and she was ill.  In any event, the Defendants informed the Court and the Plaintiff that they did not oppose the Plaintiff's untimely request for an extension of time and the Court GRANTS the Plaintiff's First Motion for Extension of Time to Respond [Doc. 16].

### B.      Facts as Alleged in Complaint

On both a motion for judgment on the pleadings and a motion to dismiss, the Court accepts as true the facts alleged in the Plaintiff's complaint. The Plaintiff contends he has an "ownership interest" in property located at 5067 Windsor Forrest Lane, College Park, Fulton County, Georgia 30349.[3] The Plaintiff acquired title to this Property by Warranty Deed on March 30, 2005.[4] The Plaintiff executed a Deed to Secure Debt in the amount of $105,000 to Lender Fremont Investment & Loan.[5] The

---

[2]      *See* Entry of October 30, 2013.

[3]      *See* Compl., ¶ 1.

[4]      *Id.* ¶ 11.

[5]      *Id.* ¶ 12.

Plaintiff also executed a second Deed to Secure Debt in the amount of $26,400 to Lender Fremont Investment & Loan.[6]

The Property was placed in a Real Estate Mortgage Investment Conduit under the terms of a Pooling and Servicing Agreement.[7]  Wells Fargo is the Custodian and Master Servicer of the Real Estate Mortgage Investment Conduit.[8] HSBC Bank USA, N.A. is the Trustee of the Real Estate Mortgage Investment Conduit.[9]  Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1 is the Issuing Entity of the Real Estate Mortgage Investment Conduit which has 4,688 loans with an approximate pool value of $892,335,000.[10] Countrywide Home Loans Servicing, L.P. is the Servicer of the loan.[11]

The Security Deed recites that MERS is the nominee for Lender and Lender's successors and assigns and that MERS is the grantee under the Security Instrument. The Security Deed lists Fremont Investment & Loan as the Lender.[12] The Plaintiff

---

[6]     *Id.* ¶ 13.

[7]     *Id.* ¶ 14.

[8]     *Id.* ¶ 15.

[9]     *Id.* ¶ 16.

[10]    *Id.* ¶ 17.

[11]    *Id.* ¶ 18.

[12]    *Id.* ¶¶ 19-21.

contends without explanation that this "confusion in the chain of title creates doubts as to the validity of documents and authority of signatories in the transactions, transfers and assignments in the instant case."[13]

The Plaintiff alleges that the chain of title reflects no assignments from March 30, 2005 until May 12, 2010.[14] The Plaintiff contends this is a "gap in the legal chain of title" which requires the Defendants to establish the validity of their legal standing to conduct foreclosure proceedings.[15]  The Plaintiff contends that the Defendants fraudulently initiated publication of foreclosure on April 9, 2010 (and repeated publication through July 2, 2010) without having a valid assignment because the Assignment was not recorded until July 1, 2010.[16] The Plaintiff alleges that the Defendants again published flawed foreclosure notices from May 13, 2011 through June 3, 2011, and from August 12, 2011 through September 2, 2011.[17] The Plaintiff contends these notices were flawed and failed to comply with O.C.G.A. § 44-14-162.2

---

[13]     *Id.* ¶ 24.

[14]     *Id.* ¶ 25.

[15]     *Id.* ¶ 26.

[16]     *Id.* ¶¶ 27-29.

[17]     *Id.* ¶¶ 30-31.

governing notices of foreclosure because they listed the Property as located in "Atlanta, GA 30349" and not College Park, GA 30349.[18]

On July 1, 2010, the Transfer and Assignment of Deed was filed with the Clerk of the Superior Court of Fulton County.[19]  MERS later issued a Deed Under Power to HSBC Bank USA, N.A. as Trustee for Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2005-FM1 on October 11, 2011.[20]  This Transfer and Assignment was recorded on October 27, 2011.[21] The Plaintiff contends this reference to Nomura is in error and is another reason for the invalidity of the foreclosure.[22]  The Plaintiff states that the Assignment conflicts with the terms of the Pooling and Servicing Agreement for the Real Estate Investment Conduit which state that the trust had a closing date of August 30, 2005.[23]  The Plaintiff states that the Transfer had to be from Nomura Home Equity Loan, Inc. and not MERS.[24]

---

[18]     *Id.* ¶¶ 47-48.

[19]     *Id.* ¶ 32.

[20]     *Id.* ¶ 34.

[21]     *Id.*

[22]     *Id.* ¶ 35.

[23]     *Id.* ¶¶ 37-38, 40.

[24]     *Id.* ¶ 39.

In Count One of his complaint, the Plaintiff seeks a declaratory judgment that he is the sole owner of the Property and the foreclosure sale that occurred on September 6, 2011, should be declared null and void.[25] In Count Two, the Plaintiff seeks to quiet title on the Property as the fee simple owner.[26] The Plaintiff asserts a claim for wrongful foreclosure in Count Three contending that the Defendants (a) failed to transfer and assign the Security Deed prior to publication of foreclosure, (b) listed the Property in the wrong municipality, (c) failed to validly record transfers and assignments for 5 years and (d) "other inaccuracies."[27] The Plaintiff contends these actions caused him damages in the "inability of Plaintiff to save his home from foreclosure and the chilling of bidding on the property at the foreclosure sale."[28] The Plaintiff also alleges intentional infliction of emotional distress, negligence, attorney's fees and expenses of litigation.

For clarification, the Plaintiff has attached to his complaint as Exhibit D a Transfer and Assignment of Deed to Secure Debt dated March 12, 2010.  This Assignment states that MERS acting as nominee for Fremont Investment & Loan as

---

[25]     *Id.* ¶ 56.

[26]     *Id.* ¶¶ 60-63.

[27]     *Id.* ¶ 66.

[28]     *Id.* ¶ 67.

Assignor has transferred to HSBC Bank USA, N.A., as Trustee for the Certificate Holders, Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1, as Assignee, all of the assignor's rights to the Deed to Security Debt.[29]  This Assignment was recorded on July 1, 2010.

Although not clear from the Plaintiff's complaint, the documents attached to his complaint demonstrate that a foreclosure sale was held on the Property on September 6, 2011, with HSBC Bank USA, N.A. as the high bidder.   The Property was transferred to HSBC Bank USA, N.A. by Deed Under Power and recorded on October 27, 2011.  The Property has since been transferred to Twin Cribs LLC via Warranty Deed signed on June 6, 2012, and recorded on August 29, 2012.

### C.    Contentions

The Defendant Rubin Lublin contends that it is not a proper defendant to the Plaintiff's attempt to quiet title through a declaratory judgment action because Rubin Lublin has never claimed an interest in the Property. The Defendant Rubin Lublin also argues that the Plaintiff cannot pursue a quiet title action because the Plaintiff has not tendered the amount owed on the Property; the Plaintiff cannot show he is the owner of the Property which was deeded to HSBC Bank USA, N.A. in a foreclosure sale that has not been set aside; and the Plaintiff has not named the current owner of the

---

[29]    *See* Compl., Exh. D.

Property in the quiet title action or attached a plat survey of the land. The Defendant Rubin Lublin also avers that it cannot be liable on the Plaintiff's wrongful foreclosure claim because it had no duty to the Plaintiff and the sale was properly conducted.

In their motion to dismiss, the Defendants Countrywide Home Loans Servicing, L.P.;  HSBC Bank USA, N.A.; MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1 argue that the Defendants did not breach any statutory foreclosure duty; the Plaintiff cannot show that any damages he suffered were as a result of any alleged breach by the Defendants; the Plaintiff cannot seek equitable relief because he has not tendered amounts owed under the loan; the Plaintiff lacks standing to challenge any assignments or pooling and servicing agreements; and the Plaintiff fails to properly allege a quiet title action.

The Plaintiff responds that he should be permitted to engage in discovery before the Court rules on the Defendants' motion to dismiss and motion for judgment on the pleadings.  He notes that the Independent Foreclosure Review has determined that the Plaintiff is entitled to payments as a result of the agreement between federal regulators and Bank of America and this must be some indication of improprieties in his foreclosure. The Plaintiff alleges that mortgage procedures must be adhered to strictly.

## II. Discussion

### A.    Preliminary Matters

In his response, the Plaintiff refers to documents from the federal Independent Foreclosure Review and an Affidavit of a "Certified Mortgage Securitization Auditor."  Neither of these documents is referenced in nor attached to his complaint. On a motion to dismiss and motion for judgment on the pleadings, the Court is not permitted to go beyond the four corners of the Plaintiff's complaint.  However, in the interest of judicial efficiency because even considering these documents does not give the Plaintiff any better outcome, the Court refers to them. The Plaintiff also recites a great deal of "factual background" in his response that was not alleged in his complaint.  A party may not amend his complaint by means of legal briefing.

The Plaintiff states throughout his response that before ruling on the Defendants' motion to dismiss and motion for judgment on the pleadings, the Court should give him an opportunity to engage in discovery in order to substantiate his claims.  However, a plaintiff is not "entitled" to discovery.  A plaintiff must first file a complaint which states a legal claim before the door to discovery is opened.  Under the Federal Rules of Civil Procedure, a plaintiff may not speculate as to a host of various improprieties that could potentially occur in any foreclosure process and then

use that speculation to bootstrap a request for discovery.[30]   If the Court determines

any claims remain after adjudicating the Defendants' motions, discovery would begin

then.

### B.    Wrongful Foreclosure

The Plaintiff contends that the foreclosure sale that took place on September 6,

2011, is wrongful because the Defendants (a) failed to transfer and assign the Security

Deed prior to publication of foreclosure, (b) listed the Property in the wrong

municipality, (c) failed to validly record transfers and assignments for five years and

(d) proffered documents with "other inaccuracies."   In his response, however, the

Plaintiff did not address any of the specific arguments raised by the Defendants in

their motion for judgment on the pleadings and motion to dismiss as to why these

claims fail.

Before reaching the merits of the Plaintiff's claim, the Court finds it fails for

several procedural reasons.   Georgia courts have consistently held that if a plaintiff

seeks any kind of equitable declaratory relief, a tender must be made.[31] The Plaintiff

---

[30]     *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Rule 8 . . . does not
unlock the doors of discovery for a plaintiff armed with nothing more than
conclusions.").

[31]     *See*, *e.g.*, *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848,
850 (2003) (debtor who executed security deed and defaults on loan cannot enjoin
foreclosure unless debtor has paid or tendered amount due on loan); *Hill v. Filsoof*,

seeks both compensatory and equitable relief in his complaint and it is undisputed that he has not alleged in that complaint that he has tendered the amount owed under the loan.  Thus, at least to the extent that the Plaintiff seeks equitable relief, he has not satisfied the requirements of Georgia law.

Furthermore, Georgia law is clear that a plaintiff cannot establish causation in a wrongful foreclosure case where a borrower fails to make mortgage payments because he cannot demonstrate that his alleged injury in foreclosure was caused by the lender's acts or omissions.[32] The Plaintiff made no allegations with respect to whether he was current on his mortgage loan payments, but according to documents attached to the Plaintiff's complaint, the foreclosure process was initiated due to failure to pay under the loan. The Plaintiff has not made any allegations that any damages he suffered were not caused by his failure to make payments under the loan.

---

274 Ga. App. 474, 475 (2005) ("Before one who has given a deed to secure his debt can have set aside in equity a sale by the creditor in exercise of the power conferred by the deed, and injunction to prevent interference with the debtor's possession of the property conveyed by the deed, he must pay or tender to the creditor the amount of principal and interest due.").

[32]     *See*, *e.g.*, *DeGoyler v. Green Tree Servicing, LLC*, 291 Ga. App. 444 (2008); *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004); *Harvey v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. 1:12-CV-1612, 2012 WL 3516477 (N.D. Ga. Aug. 14, 2012) (Story, J.) ("Failure to make the proper loan payments defeats any wrongful foreclosure claim.").

Finally, the Plaintiff raises a host of improprieties with respect to the Assignment from Fremont Investment & Loan to HSBC Bank USA, N.A. as Trustee for the Certificate Holders, Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1, including that the manner of Assignment violated the Pooling and Servicing Agreement.  Georgia law is quite clear that an entity who is not a party to an assignment has no standing or authority to challenge that assignment.[33]

In *Edward v. BAC Home Loans Servicing, L.P.*,[34] the Eleventh Circuit affirmed the dismissal of borrowers' claims under the authority of *Montgomery*.  The court found that because the borrowers' claims were all based on the allegedly invalid transfer of the deed and the borrowers were not parties to that transfer, they did not have standing under Georgia law to contest the validity of the transfer and dismissal of their claims was proper.[35]

---

[33]    *See Montgomery v. Bank of America*, 321 Ga. App. 343, 346 (2013) ("Even if we were to assume, for the purposes of argument, that [the attorney's] execution of the assignment on behalf of MERS was flawed, the proper party to bring a claim against MERS would be the other party to the assignment" and not the borrower).

[34]    534 Fed. Appx. 888 (11th Cir. Aug. 16, 2013).

[35]    *See also Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings*, 399 Fed. Appx. 97, 102 (6th Cir. 2010) (there "is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment"). Nor do courts applying Georgia law recognize any cause of action based on the securitization of a mortgage. *See, e.g.*, *Montoya v. Branch Banking & Trust Co.*, No. 1:11-CV-1869-RWS, 2012 WL 826993,

In any event, even if the Plaintiff could get past these procedural hurdles, his claims would fail on their merits.  To set forth a claim for wrongful foreclosure, Georgia law requires a plaintiff establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.[36]

The Plaintiff alleges that the foreclosure is flawed because the Assignment from Fremont Investment & Loan to HSBC Bank USA, N.A. as Trustee for the Certificate

---

at *6 (N.D. Ga. Mar. 9, 2012) (court is "unaware of any legal authority – and Plaintiff points to none – that supports the proposition that the securitization of a debt relieves the debtor of her obligation to repay."); *Merkerson v. Bank of America*, Civil Action No. 1:10-CV-0050-WBH (N.D. Ga. Apr. 22, 2010) (securitization has no "real effect on Plaintiff's rights with respect to his loan, and it certainly would not absolve Plaintiff from having to make payments on his loan or somehow shield Plaintiff's property from foreclosure").  Moreover, the Security Deed clearly gives MERS the authority to hold legal title as nominee for Fremont and to assign the Security Deed.

In his response, the Plaintiff attaches the affidavit of Bobby Jo Alexander-Lister, a "Certified Mortgage Security Auditor."  Ms. Alexander-Lister discusses a host of alleged improprieties with respect to the assignment and pooling documents in this case.  Ms. Alexander-Lister's affidavit recasts the same arguments repeatedly made by owners in an attempt to forestall foreclosure.  It is replete with erroneous statements of law and wholly unhelpful to a resolution of the case.  It is not surprising, therefore, that numerous consumer protection agencies, as well as state Attorneys General and the Federal Trade Commission have issued consumer alerts warning homeowners not to fall prey to the scam of "forensic loan auditors."  Nothing in Ms. Alexander-Lister's affidavit identifies a cause of action for the Plaintiff.

[36]     *See Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004).

Holders, Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1 was not filed until July 1, 2010, and foreclosure notices were published from April 9, 2010 through July 2, 2010.  As an initial matter, the Court agrees with the Defendants that any claim for wrongful attempted foreclosure based on the 2010 notices would be untimely.  The statute of limitations for such claims is two years and the Plaintiff did not file his complaint until September 2013.      Furthermore, the Plaintiff's claim also fails on the merits.  O.C.G.A. § 44-14-162(b) states the "security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed *prior to the time of sale* in the office of the clerk of the superior court of the county in which the real property is located."[37] Under the Plaintiff's own allegations, the Assignment was filed on July 1, 2010, which is prior to the actual sale which took place in September 2011.  The Georgia statute does not require that the Assignment be recorded before any notice of foreclosure is issued.

The Plaintiff also alleges that the foreclosure was wrongfully noticed and the sale chilled because the address listed on the foreclosure stated Atlanta, Georgia and not College Park, Georgia.  Under Georgia law,

> [i]f the published advertisement of a foreclosure sale under power fails to meet the minimum legal requirements imposed by O.C.G.A. § 9-13-140(a), the advertisement is defective as a matter of law, and the

---

[37]      *Id.* (emphasis added).

resulting sale is invalid.  *See* O.C.G.A. § 44-14-162(a) . . . If the advertisement is not defective as a matter of law under O.C.G.A. § 9-13-140(a), the errors in the advertisement will support a wrongful foreclosure claim if the debtor can come forward with evidence that the defects chilled the bidding at the foreclosure sale, causing a grossly inadequate sale price.[38]

Significantly, the Plaintiff does not point to any particular document or offer any reason why College Park is the "proper" address and Atlanta is not.  Moreover, the Security Deed itself lists Atlanta, Georgia as the address.[39] The Plaintiff offers nothing more than conclusory speculation in his complaint that Atlanta is not correct.  The Court need not accept such speculation as true under *Twombly* and *Iqbal*.

O.C.G.A. § 9-13-140(a) provides:

The sheriff, coroner, or other officer shall publish weekly for four weeks in the legal organ for the county, or if there is no newspaper designated as such, then in the nearest newspaper having the largest general circulation in such county, notice of all sales of land and other property executed by the officer. In the advertisement the officer shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property. In the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, ***but provided that no foreclosure shall be invalidated by the failure to***

---

[38]    *See Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 175 (2012).

[39]    *See McCarter v. Bankers Trust Co.*, 247 Ga. App. 129, 132 (2000) ("Under Georgia law, it is clear that a security deed . . . is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.").

***include a street address or by the insertion of an erroneous street address.***[40]

Thus, by statute, Georgia law provides that even if the street address listed on the foreclosure is incorrect, that does not render the foreclosure invalid. Listing the address as Atlanta, Georgia and not College Park, Georgia therefore would not invalidate the foreclosure on its own.

In the alternative, the Plaintiff has offered nothing more than speculation that the correct zip code with a town listed as Atlanta as opposed to College Park would somehow chill the foreclosure sale. While Georgia law does require that the power of sale must be executed "fairly" and a breach of this duty can give rise to a claim for damages, such a claim "may lie only when the price realized is grossly inadequate ***and*** the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to brining about the inadequacy of price."[41] The Plaintiff has not alleged either.

Finally, the Plaintiff contends that he received $300 from the Independent Foreclosure Review and this somehow proves that the foreclosure was wrongful. The Independent Foreclosure Review was established as a part of a consent order signed

---

[40]     *Id.* (emphasis added).

[41]     *See Brown v. Freedman*, 222 Ga. App. 213, 215 (1996) (emphasis added).

between Bank of America and the Office of the Comptroller of the Currency. Courts have held that any consent orders signed between the Office of the Comptroller of the Currency and Bank of America and/or MERS do not contain a private right of action.[42] Similarly, any Independent Foreclosure Review Notice sent pursuant to the Bank of America consent order "to every borrower whose property was 'active in the foreclosure process between January 1, 2009 and December 31, 2010'" is not a "red flag," rather "it was sent to all borrowers, not only those whose foreclosures the [Office of the Comptroller of the Currency] considered suspect or improper. The [Independent Foreclosure Review Notice] does not provide probative evidence of anything other than that the Plaintiff's property was involved in foreclosure between the applicable dates, and certainly does not mandate the Plaintiff's foreclosure sale be cancelled."[43] For these reasons, the Court grants the Defendants' motion to dismiss the Plaintiff's wrongful foreclosure claim.[44]

---

[42]    *See*, *e.g.*, *Green v. Bank of America Corp.*, 530 Fed. Appx. 426 (6th Cir. 2013).

[43]    *Id.* at 431; *see also Brown v. The Bank of New York Mellon*, Civil Action No. 1:13-CV-0214-SCJ-GGB, slip op. at 12 (N.D. Ga. Aug. 13, 2013, *Report and Recommendation adopted*, (N.D. Ga. Nov. 14, 2013) (holding plaintiff not "entitled to any relief based upon the consent orders or the [Independent Foreclosure Review] process")).

[44]    The court notes the Plaintiff also raised a claim of negligence. The elements of a wrongful foreclosure claim and a negligence claim are identical – (1) duty, (2) breach, (3) causation, (4) damages. *See Johnson v. American National Red*

### C.    Quiet Title

Georgia recognizes both a "conventional quia timet" action which addresses deficiencies in specific documents which might cloud title, *see* O.C.G.A. § 23-3-40, as well as a quia timet which attempts to perfect title "against all the world."[45]  It is not clear whether the Plaintiff is seeking a "conventional quia timet" action or whether the Plaintiff seeks to quiet title "against all the world."[46] The Plaintiff cannot succeed on a claim pursuant to O.C.G.A. § 23-3-60 because he has not alleged many of the statutory prerequisites to this claim, such as including a particular description of the land involved in the proceeding, including a plat survey of the land, including a copy

---

*Cross*, 276 Ga. 270, 272 (2003) ("[i]t is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages."); *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004) ("Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.").  Because the Plaintiff's negligence claim would fail for the same reasons his wrongful foreclosure claim fails, the court need not determine whether one is the "more appropriate" cause of action than the other.  *But see Stimus v. CitiMortgage, Inc.*, Civil Action No. 5:10-CV-435, 2011 WL 2610391 (M.D. Ga. 2011) (Treadwell, J.) (holding that breach of statutory foreclosure duties under O.C.G.A. §§ 23-2-114 and 44-14-82 gives rise to cause of action of wrongful foreclosure and ***not*** negligence).

[45]     *See* O.C.G.A. § 23-3-60.

[46]     *Compare Johnson v. Red Hill Associates, Inc.*, 278 Ga. 334 (2004) *with Gurley v. East Atlanta Land Co.*, 276 Ga. 749 (2003) and *Paul v. Keene*, 272 Ga. 357 (2000).

of the instrument upon which his interest is based, and providing the name and address of possible adverse claimants.[47] The Plaintiff's § 23-3-40 claim fails because the Plaintiff has not alleged that he paid off the mortgage loan in full to satisfy the Security Deed or that his signature on the Security Deed was false.[48]  For these reasons, the Plaintiff's quiet title claim fails. Because the Plaintiff has failed to state a claim for wrongful foreclosure or quiet title, his derivative causes of action of intentional infliction of emotional distress, punitive damages, and attorney's fees also fail.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant Rubin Lublin's Motion for Judgment on the Pleadings [Doc. 6]; GRANTS the Defendants Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1's

---

[47]      *Id.*, § 23-3-62(b) and (c).

[48]      As the court described above, Georgia common law is also clear that in order to be entitled to equitable relief, the borrower must tender the amount due on the underlying mortgage loan. *See*, *e.g.*, *Hill v. Filsoof*, 274 Ga. App. 474, 475 (2005); *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 850 (2003).  Courts in this district have applied this requirement to quiet title actions.  *See*, *e.g.*, *Warthen v. Litton Loan Servicing LP*, Civil Action No. 1:11-CV-2704-JEC, 2012 WL 4075629, at *5 (N.D. Ga. Mar. 26, 2012) (dismissing quiet title action for failure to comply with tender requirement).

Motion for Leave to File Excess Pages [Doc. 9]; GRANTS the Defendants Countrywide Home Loans Servicing, L.P.; HSBC Bank USA, N.A.; MERS; and Nomura Home Equity Loan, Inc. Asset-Backed Certificates Series 2005-FM1's Motion to Dismiss [Doc. 10]; and GRANTS the Plaintiff's First Motion for Extension of Time to Respond [Doc. 16].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

SO ORDERED, this 30 day of July, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\13\Cummings\judgmenttwt.wpd                    -21-